ELINOR and LIONEL E. SENTELL, SR., Petitioners v. COMISSIONER OF INTERNAL REVENUE, Respondent
Sentell v. Commissioner
Docket No. 18788-82.
United States Tax Court
T.C. Memo 1985-442; 1985 Tax Ct. Memo LEXIS 188; 50 T.C.M. (CCH) 889; T.C.M. (RIA) 85442; August 22, 1985. Elinor Sentell and Lionel E. Sentell, Sr., pro se. Robert W. West, for the respondent. CALDWELL
MEMORANDUM FINDINGS OF FACT AND OPINION CALDWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) of the Code. [1]
Respondent determined deficiencies in petitioners' 1979 and 1980 Federal income taxes in the amounts of $1,969 and $2,218, *189 respectively. The sole issue for decision is whether petitioner Lionel Sentell's (hereinafter, petitioner) employment at Taft, Louisiana in 1979 and 1980 was temporary or whether it was indefinite.Resolution of that question will determine whether certain expenses are deductible by him as away-from-home traveling expenses under section 162(a)(2). The parties stipulated at trial the amounts of travel expenses incurred and paid by petitioner, and thereby the substantiation aspect of the issue was removed. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts with its attached exhibits is incorporated herein by reference. Petitioners resided in Ocean Springs, Mississippi, at the time the petition was filed in this case. Petitioner is an electrician by trade, having followed that calling for over 30 years. He is a member of IBEW Local 903 at Gulfport, Mississippi, and was president of that local during each of the taxable years involved. Petitioner was born and raised in Biloxi, Mississippi, and lived there until 12 years ago when he moved to Ocean Springs. He and his wife lived with his mother (until her death in 1979) in Ocean Springs. They *190 had only one unmarried child, a son who was away at college. Mrs. Sentell was employed by the Hilton Hotel in Biloxi. In February 1978, petitioner was referred by the business agent of Local 903 to the business agent of IBEW Local 130 at Metairie, Louisiana. The latter referred petitioner on March 1, 1978, to Fischbach and Moore, Inc., (F&M) at the Waterford III nuclear power plant (the Plant) at Taft, Louisiana, 50 miles upstream from New Orleans on the Mississippi River. F&M was the electrical subcontractor under Ebasco Services, Inc., (Ebasco), the general contractor which was building the Plant for Mid-South Utilities, Inc., and its subsidiary, Louisiana Power and Light. The Plant had originally been conceived in or about 1971, when the land was cleared. Further work was suspended until 1975 when construction began. Petitioner was hired by F&M as a member of the maintenance crew. The maintenance crew was charged with seeing to the installation of lighting and temporary pumps in the building during construction. The Plant was about 40 percent complete at the time petitioner was hired by F&M. The projected completion date for the Plant at that time was February 1981, and *191 this information was a matter of common knowledge in the community and occasionally appeared in the newspapers. [2]
Petitioner was not advised by F&M as to how long he would be employed at the Plant. He was in fact employed by F&M until May 5, 1980, when he was terminated. The reason for the termination was that Ebasco had decided to take over the maintenance work itself. Petitioner returned to the Local 130 hiring hall, was sent back to Ebasco at the Plant, and was hired by Ebasco the next day (May 6, 1980). Petitioner worked for Ebasco at the Plant until January 11, 1982, when he voluntarily quit. [3] At the time of termination, petitioner was rated "good" in all six categories of evaluation and was eligible for rehiring. In point of fact, petitioner was rehired by Ebasco four months later (following employment by E.C. Ernst on a job at Houma, Louisiana), and worked for that company for over a year -- 8 months in Gulfport and the remainder of the time back at the Plant). The parties have stipulated, as follows: *192 15. In March, 1978 when Mr. Sentell was hired by Fischbach and Moore there was such a shortage of electricians for work at the Plant that Fischbach and Moore had to obtain workers from Canada because there were not enough electricians available nationally. 16. Once the work of electricians became important to the construction of the Plant, their work was necessary throughout the life of the project. *193 Construction of the Plant was completed in 1983, and in October of that year it went "on line" in a test mode but not in commercial operation. The collective bargaining agreement between Local 130 and contractors in its geographical jurisdiction provided that in the event of lay-offs, journeymen wiremen who were "travelers," such as petitioner, were to be laid off prior to Local 130 journeymen wiremen, but after Local 130's journeymen technicians and nonunion electricians. Neither F&M nor Ebasco, each of which obtained all of its electricians through Local 130, followed that policy in lay-offs. The management of those contractors, usually in the person of the foreman, decided which electricians were to be laid off, without input from the union. Petitioner claimed deductions for away-from-home traveling expenses in the amounts of $6,046 and $7,947 for the years 1979 and 1980, respectively. Respondent disallowed the deductions in their entirety in his statutory notice of deficiency. He explained the disallowance as follows: The amount of $6,046.00 and $7,947.00, respectively, claimed as employee business expenses on your 1979 and 1980 return is not allowed because it has not *194 been established that any amount constitutes an ordinary and necessary business expense or was expended for the purpose designated. Also, since you were not away from your tax home when you incurred the expenses, they are not deductible. Therefore, your taxable income for the years 1979 and 1980, respectively, is increased in the amount of $6,046.00 and $7,947.00. As mentioned above, the parties have stipulated the amount of such expenses incurred and paid by petitioner: $7,397.48 for 1979, and $7,492.22 for 1980. OPINION Section 162(a)(2) provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year, including traveling expenses while away from home in pursuit of a trade or business. Away-from-home traveling expenses are deductible by a taxpayer in a location away from his residence, if the employment is temporary. However, if the employment is indefinite or permanent, then such expenses are personal and non-deductible under section 262. . We agree with respondent that in this case, petitioner's employment at the Plant during 1979 and 1980 *195 was indefinite, and consequently the determination of disallowance must be sustained. We can readily agree with petitioner that his employment at the Plant was not permanent. However, such employment was indefinite, which requires that the expenses here in issue be disallowed. Employment may be regarded as temporary only if it can be expected to last for a short period of time. . The Court of Appeals for the Fifth Circuit, to which an appeal would lie in this case, has looked to the taxpayer's prospect for continued employment as determinative of the issue of temporary versus indefinite. . Furthermore, even if work is temporary in the beginning, it may become indefinite with the passage of time. . In the present case, possibly for 1978 petitioner's employment at the Plant may have been susceptible of a temporary classification, but we are persuaded that in the taxable years here involved (1979 and 1980) his employment had become indefinite. At that time completion of the Plant was *196 not projected until 1981, the plant only approximately half completed, there was a shortage of electricians, and there was (the parties have stipulated) a need for electricians throughout the life of the project. Petitioner, in fact, worked continuously at the Plant until January 1982 when he voluntarily quit. To be sure, there were two employers -- first F&M and then Ebasco. However, work for different employers at the same location will not be considered separately for the purpose of determining if the employment was temporary. Employment at one location for different employers constitutes continuous employment. . Petitioner did not miss a single day's work when he switched from F&M to Ebasco in May 1980. We hold that petitioner's employment at the Plant was indefinite in the years 1979 and 1980. Accordingly, respondent's determination must be sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The projected completion date was revised from time to time. Thus, on January 1, 1979 and 1980 it was October 1981; and on January 1, 1981, it was April 1983.↩
3. Petitioner's termination notice shows the reason for his termination as being lack of work. However, the notice had originally stated that he had voluntarily quit. The check mark in the box has been whited out and the "lack of work" box checked by William Shea two days later on January 13, 1982. Mr. Shea was employed in Ebasco's labor relations department and was a friend of petitioner. Other evidence in the record, principally Exhibit D, a document showing the number of electricians employed at the Plant from May 30, 1978, to November 22, 1982, is persuasive that there was no lack of work there on January 11, 1982. Also, seven other electricians were terminated the same week as petitioner -- three of whom voluntarily quit and four of whom were discharged for cause (i.e., fired).↩